UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTOPHER ORTIZ,

                Plaintiff,

                                          18 Civ. ____

   vs.                                         **COMPLAINT**

CITY OF NEW YORK,
DOC Officer Burke (shield #18606),
DOC Captain Richards (shield #829),
"JOHN/JANE DOE Supervisors of MDC ##1-20",

                Defendants.
------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    This is a civil rights action brought by plaintiff Christopher Ortiz for damages pursuant to 42 U.S.C. §1983. While a pre-trial detainee being held at New York City Department of Correction's Manhattan Detention Center, Mr. Ortiz was brutally beaten by an inmate and correction officer without justification in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. This assault seriously injured Mr. Ortiz, causing him to sustain permanent serious physical injuries to his left eye and mental and emotional anguish.

2.    The City of New York and the New York City Department of Correction ("DOC" or "the Department") are, or should be, aware that its staff members persistently use brutal force and cause serious injury. The incident involving Mr. Ortiz is part of a pattern of incidents where individuals have alleged assaults and excessive force committed by DOC staff for which they suffered serious injuries.

3. The DOC staff that acted in concert with the inmate to assault Mr. Ortiz then covered up his complicity by falsely charging Mr. Ortiz with assault and refusal to obey a direct order in disciplinary proceedings.

4. Mr. Ortiz now seeks redress against the DOC employee who acted in concert with the inmate to assault him and their supervisors, and the City of New York.

## JURISDICTION AND VENUE

5. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983.

6. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4).

7. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

8. Mr. Ortiz demands trial by jury in this action.

## PARTIES

9. Christopher Ortiz is a citizen of the United States and resided in New York City at the time when these events occurred.

10. Defendant City of New York ("City") is a municipal corporation which, through its Department of Corrections ("DOC"), operates a number of detention facilities. The DOC, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff and inmates, access to medical and other program services mandated by local law and court orders. In addition, senior officials and supervisors in

the DOC are aware of and tolerate certain practices by subordinate employees in the jails and fail to discipline employees for behavior that is inconsistent with formal policy which in turn ratifies and encourages the continuation of such practices.  These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten DOC policies or customs.  The DOC is also responsible for the appointment, training, supervision, discipline and conduct of all DOC personnel, including the defendants referenced herein.

11.     At all times relevant hereto, DOC Officer Burke (shield #18606) was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law.  On information and belief, defendant Burke worked at the Manhattan Detention Center located at 125 White Street in Manhattan at the time of the October 19, 2015 incident alleged herein.  Defendant Burke is sued in his individual capacity.

12.     DOC Captain Richards (shield #829) was a Captain at the Manhattan Detention Center located at 125 White Street in Manhattan, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law.  On information and belief, defendant Richards, as a Captain at the MDC, was responsible for supervising New York City Department of Correction officers, Correction Officer Burke and other staff with respect to the operations at the MDC.  These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols.  Defendant Richards is sued in his individual capacity.

13.     At all times relevant hereto, "John/Jane Doe Supervisors of MDC ##1 through 20" were responsible for supervising New York City Department of Correction officers and

other staff with respect to the operations at the Manhattan Detention Center ("MDC") located at 125 White Street in Manhattan, and were acting in the capacity of agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law. On information and belief, defendants "John/Jane Doe Supervisors of MDC ##1 through 20" held titles including but not limited to warden, deputy warden, chief, assistant chief, assistant deputy warden, lieutenant, sergeant, and captain at MDC. Their responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. Defendants "John/Jane Doe Supervisors of MDC ##1 through 20" are sued in their individual capacities.

14. At all times relevant hereto, "John/Jane Doe Supervisors of MDC ##1 through 20", whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John/Jane Doe," were acting in the capacity of supervisor, agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law.

15. Defendants "John/Jane Doe Supervisors of MDC ##1 through 20" and Captain Richards are collectively referred to as the "Supervisory DOC Defendants."

16. On information and belief, the Supervisory DOC Defendants were supervising officers of the MDC and responsible for defendant Burke at the time of the October 19, 2015 incident alleged herein. The Supervisory DOC Defendants are sued in their individual capacity.

## STATEMENT OF FACTS

### New York City's Jails: A History of Abuse

17. For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]

18. For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed DOC staff members abusing inmates and covering-up said abuse sufficiently serious to merit criminal prosecutions of DOC staff members.

19. *Ingles v. Toro*, 428 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the widespread practice of DOC staff using excessive force in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from those who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the Department's use of force policy.

20. However, despite those prior class actions and settlements, the system-wide culture of violence continued in New York City jails. In 2011, another class action *Nunez v. City of New York,* 11 Civ. 05845 (SDNY)(LTS)(JCF) was filed alleging a pattern and practice of

---

[1] *See, e.g. Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) (Correction Institution for Men); *Jackson v. Montemagno*, 85 Civ. 2384 (AS) (E.D.N.Y.) (Brooklyn House of Detention); *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) (Bellevue Prison Psychiatric Ward); *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) (Central Punitive Segregation Unit).

unnecessary and excessive force inflicted upon inmates of New York City jails by Department of Correction uniformed staff. *Nunez* also alleged that supervisors in the jails and at the highest levels of the Department created and perpetuated a policy of permitting uniformed staff to use unlawful excessive force with impunity. According to the complaint in *Nunez*, despite having full knowledge of the practice of unconstitutional use of excessive force and the scores of serious injuries prisoners suffered as a result of such practice — such as broken bones, perforated eardrums, and spinal injuries— supervisors failed to curb such abuses and even encouraged it.

21.     In August 2014, after conducting a two-and-a-half year investigation into the abuses, Attorney General Eric Holder and Assistant U.S. Attorney for the Southern District Preet Bharara issued a scathing report and press release stating, "Riker's Island is a broken institution. It is a place where brute force is the first impulse rather than the last resort; where verbal insults are repaid with physical injuries; where beatings are routine while accountability is rare." http://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-finds-pattern-and-practice-excessive-force-and-violence-nyc-jails

22.     In December 2014, the United States Department of Justice joined the *Nunez* plaintiffs in their lawsuit against the City after it failed to implement in a timely fashion reforms recommended by the Justice Department in its August report. *See* http://www.justice.gov/usao-sdny/pr/department-justice-takes-legal-action-address-pattern-and-practice-excessive-force-and.

23.     Yet, the violence and unaccountability continued. In February 2015, the New York Times reported that "despite extraordinary levels of outside scrutiny," the violence within New York City's Department of Correction has "continued largely unabated." http://www.nytimes.com/2015/02/22/nyregion/even-as-many-eyes-watch-brutality-at-rikers-island-persists.html? The New York Times identified 62 cases of brutal confrontations during the

five months after the Justice Department's August 2014 report in which inmates were seriously injured by corrections officers. Seventy percent were head injuries from direct blows to the head, despite department policies directing guards to avoid blows to the head unless absolutely necessary. In October 2014, a typical month, one inmate had his jaw shattered, another had his arm broken, and a third had three teeth knocked out. *Id.* The same article reported that one of the key findings in the Justice Department's August 2014 report -- that cover-ups by guards and other jail staff members were commonplace -- continued to be true. The article cited an inadequate disciplinary system as a root cause for the continued violence. "Among the most pressing needs is remaking the department's disciplinary system, which seems incapable of holding violent guards accountable… With a disciplinary system that is so feeble, there are officers who have been allowed to abuse inmates again and again." *Id.*

24.     In June 2015, the City and the Department entered into a settlement with the *Nunez* plaintiffs and the Justice Department, which Assistant U.S. Attorney Preet Bharara touted as a "comprehensive framework requir[ing] the city to implement sweeping operational changes to *fix a broken system and dismantle a decades-long culture of violence.*" See http://www.nytimes.com/2015/06/23/nyregion/new-york-city-settles-suit-over-abuses-at-rikers-island.html (emphasis added).

25.     The City and DOC have also been aware of the Department's deeply flawed hiring and retention system. In January 2015, the New York City Department of Investigations (DOI) issued a report which "exposed a shockingly inadequate screening system, which has led to the hiring of many officers that are underqualified and unfit for duty." https://www1.nyc.gov/assets/doi/press-releases/2015/jan/pr01rikers_aiu_011515.pdf Under this system, officers were hired despite numerous corruption and safety hazards, including multiple

prior arrest and convictions, prior associations with gang members, or relationships with inmates. The DOI found that the Department failed to properly train staff assigned to handle candidate screening and was devoid of a meaningful recruitment strategy, leading to "red flags" that were missed or lacked follow up.  Shockingly, DOI found instances in which DOC was aware of applicants' prior associations with gang members but failed to coordinate with its own Correction Intelligence Bureau to take the proper precautions.

26. Despite knowing that it had a flawed hiring system, the Department failed to take steps to identify and monitor officers with prior associations with gang members or relationships with inmates which led to further corruption and violence resulting in serious injuries to staff and inmates.

27. Through these lawsuits, press reports, Department of Investigation probes, and DOC's elaborate reporting system, the Supervisory DOC Defendants were aware of the corruption and large number of incidents involving the system-wide use of unnecessary and/or excessive force resulting in serious injuries and have failed to take sufficient steps to curb this pattern of abuses.

28. The Department and the Supervisory DOC Defendants were aware of the failure of the Department to identify and monitor officers who are vulnerable to corruption, bring disciplinary charges against its officers to promote institutional reform, punish staff that misuse force, and discourage others from doing so.  Through all these cases, DOI findings, and Department reports, the Supervisory DOC Defendants were aware of the widespread practice by DOC staff.  They were also aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct, a practice that causes further abuse.

**The Assault on Christopher Ortiz**

29. In October 2015, Christopher Ortiz was a pre-trial detainee being held at the Manhattan Detention Center (MDC) of the New York City Department of Correction. Mr. Ortiz was awaiting trial for allegedly killing a high-level Bloods gang member in self-defense.

30. Due to the allegations, Mr. Ortiz was in mortal danger while in the custody of DOC, which is overrun by Bloods gang members. As a result, Mr. Ortiz was being housed in protective custody.

31. Mr. Ortiz was a pantry worker and a suicide prevention aide while at MDC. He was a model prisoner and had no prior disciplinary tickets.

32. At approximately, 12:00 pm on October 19, 2015, Mr. Ortiz was serving lunch to the other inmates when he noticed inmate Cedrick Scott talking to the steady officer, defendant Correction Officer Burke (shield #18606).

33. Upon information and belief, defendant Burke and inmate Scott were previously associated with one another from outside the facility.

34. After lunch service, Mr. Ortiz went to the telephones to make a call to his long-term girlfriend, Tess Pargas, when he noticed inmate Scott talking to defendant Burke again.

35. Inmate Scott walked away from defendant Burke over to Mr. Ortiz and, with great force, punched him on his right temple.

36. Before Mr. Ortiz could get away from inmate Scott, defendant Burke, without warning, sprayed Mr. Ortiz -- and only Mr. Ortiz – in the face with mace.

37. Blinded and incapacitated, Mr. Ortiz was unable to defend himself or get away from inmate Scott who continued to punch Mr. Ortiz in the face with great force.

38. Defendant Burke did not intervene or attempt to stop inmate Scott from continuing to beat Mr. Ortiz. Instead, Officer Burke sprayed Mr. Ortiz a second time with mace, further incapacitating him and preventing him from defending himself.

39. Inmate Scott continued to beat Mr. Ortiz until the response team arrived and restrained Scott.

40. Defendant Burke stood by and did nothing to stop inmate Scott from continuing to assault Mr. Ortiz.

41. Officer Burke covered up his complicity in the attack by falsely charging Mr. Ortiz with assault and refusing to obey a direct order when he knew that Mr. Ortiz was the victim.

42. Defendant Captain Richards was defendant Burke's supervisor and knew that Mr. Ortiz was the victim of an assault by inmate Scott and Officer Burke. Nonetheless, defendant Richards authorized and signed off on the disciplinary charges alleging that Mr. Ortiz assaulted inmate Scott and refused to obey a direct order. By doing so, Captain Richards covered up and ratified defendant Burke's conduct.

43. As a result of the attack, Mr. Ortiz suffered a serious and permanent injury to his left eye causing him to have damage to his retina, blurry and double vision, photophobia, tearing, and headaches.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourth and Fourteenth Amendments/Excessive-Unnecessary Force
### (Against Defendant Correction Officer Burke)

44. Plaintiff repeats and realleges the forgoing paragraphs as if the same were fully set forth at length herein.

45. By reason of the foregoing, Defendant Correction Officer Burke, by acting-in-concert with an inmate to assault, batter, and use gratuitous, excessive, brutal, sadistic, and unconscionable force, and failing to prevent, intervene, or stop the inmate from doing so, during the incident alleged herein, deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution to be free from gratuitous and excessive force.

46. Defendant Burke acted under pretense and color of state law and in his individual and official capacity and within the scope of his employment as a DOC officer and employee. Said acts by this defendant was beyond the scope of his jurisdiction, without the authority of law, and an abuse of his power. Defendant Burke acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the United States Constitution.

47. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983/Fourth Amendment/Excessive-Unnecessary Force/Monell
### (Against Defendant City and Supervisory Defendants)

48. Plaintiff repeats and realleges the forgoing paragraphs as if the same were fully set forth at length herein.

49. Defendant City, through DOC, and the Supervisory DOC Defendants, acting under the pretense and the color of state law, permitted, tolerated and were deliberately indifferent to a pattern and practice of staff brutality at the time of plaintiff's beating. This widespread tolerance of correction officer abuse constituted a municipal policy, practice or custom and led to plaintiff's assault.

50. Defendant City, DOC, and the Supervisory DOC Defendants, acting under the pretense and the color of state law, hired and retained correction officers, including the individual defendants in this case, who were underqualified, unfit for duty, and who they knew and/or should have known were vulnerable to corruption, which led to plaintiff's assault.

51. Policymaking officials at the Department of Correction were deliberately indifferent to their obligations to properly hire, train, supervise and discipline their employees, including the individual defendants in this case, with respect to such matters, in order to deter and prevent such constitutional violations from occurring.

52. The Supervisory Defendants knew and/or should have known that the pattern of physical abuse described above existed at the City jails prior to and including the time of the assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and the general knowledge of their existence at the time of plaintiff's beating, and the failure of these defendants to take remedial action despite the fact that the misuse of force at City

jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of persons on their premises and in their custody, including the plaintiff in this action. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

53. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourth and Fourteenth Amendments to be free from gratuitous and excessive force.

54. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## **PRAYERS FOR RELIEF**

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants:

1. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Christopher Ortiz as a result of the events alleged herein.

2. Punitive damages in an amount to be determined at trial.

3. An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

4. Such other further relief as the Court may deem appropriate.

Dated: September 17, 2018
       New York, New York

                              ROMANO & KUAN, PLLC

                              Julia P. Kuan (JK 3822)
                              600 Fifth Avenue, 10th Floor
                              New York, New York  10020
                              (212) 763-5075
                              julia.kuan@romanoandkuan.com

                              *Attorneys for Plaintiff*